UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X 11 CV 3848 (ENV)(JO)
ALBERT SHAMBLEE,

                        Plaintiff,

                                        SECOND AMENDED
                                        COMPLAINT

    -against-

                                        JURY DEMAND

THE CITY OF NEW YORK, UNDERCOVER
POLICE OFFICER "C0098", DETECTIVE
CHRISTOPHER SCHILLING (Tax # 926084), SERGEANT
FRITZ GLEMAUD (Tax # 915804), DETECTIVE
MICHAEL PETITTO (Shield # 02233), DETECTIVE
HASAN ELCI (Shield # 15598), DETECTIVE MICHAEL
ALGIERI (Shield # 00510), DETECTIVE RICHARD
SAPIENZA (Shield # 05378), DETECTIVE
ROBERSON JEUDY (Shield # 02233) and
UNDERCOVER POLICE OFFICER "C00115",

                          Defendants.
-------------------------------------------------------------------X

ALBERT SHAMBLEE (hereinafter "plaintiff"), by his attorney(s), The Law Offices of

Wale Mosaku, P.C., complaining of the defendants, THE CITY OF NEW YORK,

UNDERCOVER POLICE OFFICER "C0098", DETECTIVE CHRISTOPHER

SCHILLING (Tax # 926084), SERGEANT FRITZ GLEMAUD (Tax # 915804),

DETECTIVE MICHAEL PETITTO (Shield # 02233), DETECTIVE HASAN ELCI

(Shield # 15598), DETECTIVE MICHAEL ALGIERI (Shield # 00510), DETECTIVE

RICHARD SAPIENZA (Shield # 05378), DETECTIVE ROBERSON JEUDY (Shield #

02233) and UNDERCOVER POLICE OFFICER "C00115" (hereinafter collectively

referred to as "the Defendants"), upon information and belief, alleges as follows:

NATURE OF THE ACTION

1.        This is an action at law to redress the deprivation of rights secured to

            the plaintiff under color of statute, ordinance, regulation, custom,

            and/or to redress the deprivation of rights, privileges, and immunities

            secured to the plaintiff by the Fourth, Fifth and Fourteenth

            Amendments to the Constitution of the United States, and by Title 42

U.S.C. § 1983 [and §1985], [and arising under the law and statutes of the State of New York].

<u>JURISDICTION</u>

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. Section 1983, 28 U.S.C. Section 1343, 28 U.S.C. Section 1331, and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3. As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

<u>SATISFACTION OF THE PROCEDURAL PREREQUISITES FOR SUIT</u>

4. All conditions precedent to the filing of this action have been complied with. On June 13, 2011, within ninety days after the malicious prosecution claim alleged in this complaint arose, a written notice of claim, sworn to by the plaintiff, was served upon the defendant City of New York, by personal delivery of the notice in duplicate, to the person designated by law as one to whom a summons issued against such party may be delivered in an action in the applicable Courts. The plaintiff's claim was assigned the claim number "2011PI023631" by the NYC Comptroller's office.

5. At least thirty days have elapsed since the service of the above-mentioned notice of claim, and adjustment or payment of the claim has been neglected and/or refused.

6. This action, pursuant to New York State and City Law, has been commenced within one year after the happening of the event upon which the claim is based.

<u>THE PARTIES</u>

7. Plaintiff is a citizen of the United States, resident in Kings County, New York State. Plaintiff is a black male of full age.

8. At all relevant times, defendants UNDERCOVER POLICE OFFICER "C0098", DETECTIVE CHRISTOPHER SCHILLING

(Tax # 926084), SERGEANT FRITZ GLEMAUD (Tax # 915804), DETECTIVE MICHAEL PETITTO (Shield # 02233), DETECTIVE HASAN ELCI (Shield # 15598), DETECTIVE MICHAEL ALGIERI (Shield # 00510), DETECTIVE RICHARD SAPIENZA (Shield # 05378), DETECTIVE ROBERSON JEUDY (Shield # 02233) and UNDERCOVER POLICE OFFICER "C00115" (hereinafter "defendant officers") were, and upon information and belief, still are law enforcement officers employed by the Police Department of the City of New York ("NYPD").

9.  At all times herein, defendant officers were employed as law enforcement officers of the City of New York, State of New York, and were acting under the color of their official capacity and their acts were performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were the servants, agents, and employees of their co-defendant, the City of New York, so that their acts are imputed to the City of New York and the NYPD.

10. At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers through its Police Department, namely the NYPD, and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or direction of the City of New York.

11. Plaintiff sues all defendants in their individual and official capacities.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12. On or about April 8, 2011 at approximately 08:30 p.m., at or about the sidewalk located on Pulaski Street, between Stuyvesant Avenue and Lewis Avenue, Brooklyn, New York, the plaintiff was falsely arrested and/or caused to be arrested without probable cause by the defendant officers.

13.     At the above-referenced place and time, the plaintiff, whose partner was pregnant at the time, was on his way home from a convenience store located on Lewis Avenue, at or close to its intersection with Pulaski Street, from where he had gone to purchase a loaf of bread.

14.     As he was walking on Pulaski Street, headed back to his residence, the plaintiff was suddenly accosted by all or some of the defendant officers, including but not limited to defendant Schilling and Sergeant Glemaud, who demanded that he produce "the $20.00 bill".

15.     At that time, the plaintiff had the sum of $62.00 on his person, comprising of six (6) ten dollar ($10.00) bills, a one (1) dollar bill, and a one (1) dollar coin on him. The plaintiff also had the loaf of bread that he had purchased from the convenience store, which he was carrying in a grocery bag.

16.     The plaintiff informed the defendant officers that he did not have a $20.00 bill on his person, and was subsequently searched by said officers. Nothing illegal was found upon the person of the plaintiff. No $20.00 bill was found upon the person of the plaintiff.

17.     Nevertheless, the plaintiff was arrested by the defendant officers.

18.     At the time of his arrest, the handcuffs were secured too tightly around the plaintiff's wrists, causing him to sustain bruising, lacerations and swelling, and endure pain and suffering.

19.     The defendant officer Schilling refused to loosen said handcuffs when the plaintiff complained about the tightness of said handcuffs.

20.     The plaintiff was then placed in a police vehicle, and driven around for a few hours, while the defendant officers picked up other persons who, upon information and belief, they accused of being engaged in unlawful activities.

21.     That the defendants Petitto and Elci, who were the defendant officers assigned to the police vehicle that the plaintiff was placed in following his arrest, instructed the plaintiff to "shut the fuck up and

sit down" when he complained about the tight handcuffs, and asked for said handcuffs to be loosened.

22.     The plaintiff was subsequently taken to the 79th precinct, where he was unlawfully strip-searched. Nothing illegal was found upon the person of the plaintiff.

23.     That the above-referenced strip search was conducted upon the specific instruction and direction of the defendant Glemaud.

24.     The plaintiff was subsequently photographed and finger-printed at the 79th precinct.

25.     On or about 01:00 a.m. on April 9, 2011, the plaintiff was transported to "central booking" located within the Kings County Criminal Courthouse building at 120 Schermerhorn Street, Brooklyn, New York 11201.

26.     The plaintiff was subjected to another strip search upon arrival at "central booking".

27.     At the time of the incident, the plaintiff, who is a diabetic, was on medication. The plaintiff, at the time of the incident, also had a colostomy bag. As such, the plaintiff, following his unexpected and unwarranted arrest, required medical attention.

28.     The plaintiff was thus taken to Bellevue Hospital from "central booking", where he was attended to and subsequently discharged to the custody of the defendant officers.

29.     That upon his return to "central booking", the plaintiff was again subjected to a strip search.

30.      On April 9, 2011, at approximately 08:00 p.m., the plaintiff was arraigned before a Judge on the following charges:

      a.   Criminal Possession of a Controlled Substance in the Third Degree [P.L. 220.16(1)];

      b.   Criminal Sale of a Controlled Substance in the Third Degree [P.L. 220.39(1)]; and

          c.   Criminal Possession of a Controlled Substance in the Seventh Degree [P.L. 220.03].

31.       In the criminal complaint, it was stated, *inter alia*, that Undercover Police Officer "C0098" alleged that he (Undercover Police Officer "C0098") had given the plaintiff "...a sum of United States currency in exchange for which the defendant (plaintiff) did hand informant (Undercover Police Officer "C0098") a quantity of crack cocaine".

32.       The above allegations were completely untrue and false.

33.       In the criminal complaint, it was further stated, *inter alia*, that the purported transaction that the plaintiff had been involved in with the defendant undercover officer C00978, had occurred "at 953 Dekalb Avenue, County of Kings, State of New York", which is a completely different street from the one that the plaintiff was arrested on.

34.       The plaintiff pleaded "not guilty" to the above-referenced charges. Upon receipt of said plea, the Court set bail in the amount of $1,000.00, which the plaintiff could not afford to post. As such, the plaintiff was remanded to the Rikers Island Correctional Facility ("Rikers").

35.       The plaintiff was subjected to a strip search upon arrival at Rikers, and was further subjected to a strip search on each subsequent day that he remained at Rikers until his release on April 15, 2011.

36.       The Kings County District Attorney's office subsequently presented the case to a grand jury on April 14, 2011. The plaintiff testified before the grand jury. Upon information and well-founded belief, at least one of the defendant officers also testified before the grand jury.

37.       On April 14, 2011, after having heard testimony, the grand jury dismissed the charges against the plaintiff.

38.       The plaintiff, who had been transported back to Rikers following his testimony before the grand jury, was subsequently released from Rikers on April 15, 2011, at approximately 04:00 a.m.

39.     That at the time of his release from Rikers, the plaintiff was only given approximately $43.00 of the $62.00 that he had upon him at the time of his arrest.

40.     Furthermore, the one (1) dollar coin that the plaintiff had upon him at the time of his arrest, which was a memento of significant sentimental value to the plaintiff, as he had retained same following the passing of his partner, was not returned to the plaintiff.

41.     The docket # of the Criminal Court action was "2011KN027949". The grand jury case number was "2879/2011".

42.     On March 26, 2012, the deposition of defendant Schilling was taken.

43.     Defendant Schilling testified that he arrested the plaintiff on a sidewalk located on Pulaski Street, between Stuyvesant Avenue and Lewis Avenue, Brooklyn, New York.

44.     Defendant Schilling testified that he handcuffed the plaintiff at the time of his arrest.

45.     Defendant Schilling testified that the plaintiff offered no resistance at the time of his arrest.

46.     Defendant Schilling testified that at the time he arrested the plaintiff, nothing illegal was found upon the person of the plaintiff.

CAUSE(S) OF ACTION: FALSE ARREST AND FALSE IMPRISONMENT UNDER
42 U.S.C § 1983/NEW YORK STATE LAW

47.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 46 of this complaint as though fully set forth herein.

48.     The arrest, detention and imprisonment of plaintiff were without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's arrest or subsequent detention.

49.     As a result of plaintiff's false arrest and imprisonment, he has been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been caused to incur

legal expenses, and has been otherwise damaged in his character and reputation.

50.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

51.     The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

52.     This action falls within one or more of the exceptions of the New York State Civil Practice Law and Rules §1602.

<u>CAUSE OF ACTION: MALICIOUS PROSECUTION UNDER 42 U.S.C § 1983/NEW YORK STATE LAW</u>

53.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 52 of this complaint as though fully set forth herein.

54.     The commencement and continued prosecution of the criminal judicial proceeding against plaintiff, including the arrest, the imprisonment, and the charges against plaintiff were committed by or at the insistence of the defendants without probable cause or legal justification, and with malice.

55.     That the defendants were directly involved in the initiation of criminal proceedings against the plaintiff.

56.     That the defendants lacked probable cause to initiate criminal proceedings against the plaintiff.

57.     That the defendants acted with malice in initiating criminal proceedings against the plaintiff.

58.     That the defendants were directly involved in the continuation of criminal proceedings against the plaintiff.

59.     That the defendants lacked probable cause in continuing criminal proceedings against the plaintiff.

60.     That the defendants acted with malice in continuing criminal proceedings against the plaintiff.

61.     That the defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

62.     That the defendants misrepresented and falsified evidence to the prosecutors in the Kings County District Attorney's office.

63.     That the defendants withheld exculpatory evidence from the prosecutors in the Kings County District Attorney's office.

64.     That the defendants did not make a complete statement of facts to the prosecutors in the Kings County District Attorney's office.

65.     That the defendants misrepresented and falsified evidence before a Kings County Grand Jury panel.

66.     That the defendants withheld exculpatory evidence from a Kings County Grand Jury panel.

67.     The criminal judicial proceeding initiated against plaintiff was dismissed on April 14, 2011, and terminated in the plaintiff's favor.

68.     The arrest, imprisonment and prosecution of the plaintiff were malicious and unlawful, because plaintiff had committed no crime and there was no probable cause to believe that plaintiff had committed any crimes.

69.     The defendants actions were intentional, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.

70.     As a consequence of the malicious prosecution by the defendants, plaintiff suffered a significant loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against each of the defendants, individually and severally.

<u>CAUSE OF ACTION: EXCESSIVE FORCE UNDER 42 U.S.C § 1983</u>

71.     By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 70 of this complaint as though fully set forth herein.

72.     The level of force employed by one or more of the defendant officers was objectively unreasonable and in violation of the plaintiff's constitutional rights.

73.     As a result of the aforementioned conduct of the defendants, the plaintiff was subjected to excessive force, resulting in physical injuries.

CAUSE OF ACTION: UNLAWFUL SEARCH UNDER 42 U.S.C § 1983

74.     By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 73 of this complaint as though fully set forth herein.

75.     Following the plaintiff's arrest, the defendants searched and/or strip searched the plaintiff, without any individualized reasonable suspicion that he was concealing weapons or contraband.

76.     As a result of the foregoing, the plaintiff was subjected to illegal and improper searches.

77.     The foregoing unlawful searches violated the plaintiff's constitutional right to privacy, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

78.     As a consequence of said defendants' actions, the plaintiff suffered humiliation, mental anguish, depression, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against each of the defendants, individually and severally.

CAUSE OF ACTION: FAILURE TO INTERVENE UNDER 42 U.S.C § 1983

79.     By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 78 of this complaint as though fully set forth herein.

80.     Each and every individual defendant had an affirmative duty to intervene on the plaintiff's behalf to prevent the violation to his constitutional rights, as more fully set forth above.

81.     The individual defendants failed to intervene on the plaintiff's behalf to prevent the violation of his constitutional rights, despite having had a realistic and reasonable opportunity to do so.

82.     As a consequence of said defendants' actions, plaintiff suffered loss of liberty, humiliation, mental anguish, depression, loss of wages from work, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against each of the defendants, individually and severally.

<u>CAUSE OF ACTION: DENIAL OF A CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER 42 U.S.C § 1983 DUE TO THE FABRICATION  OF EVIDENCE</u>

83.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 82 of this complaint as though fully set forth herein.

84.     The individual defendants created false evidence against the plaintiff.

85.     The individual defendants forwarded false evidence and false information to the prosecutors in the Kings County District Attorney's office.

86.     That said defendants were directly involved in the initiation of criminal proceedings against the plaintiff.

87.     That said defendants lacked probable cause to initiate criminal proceedings against the plaintiff.

88.     That said defendants acted with malice in initiating criminal proceedings against the plaintiff.

89.    That said defendants were directly involved in the continuation of criminal proceedings against the plaintiff.

90.    That said defendants lacked probable cause in continuing criminal proceedings against the plaintiff.

91.    That said defendants acted with malice in continuing criminal proceedings against the plaintiff.

92.    That said defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

93.    That said defendants misrepresented and falsified evidence to the prosecutors in the Kings County District Attorney's office.

94.    That said defendants withheld exculpatory evidence from the prosecutors in the Kings County District Attorney's office.

95.    That said defendants did not make a complete statement of facts to the prosecutors in the Kings County District Attorney's office.

96.    By creating false evidence against the plaintiff; forwarding false evidence and information to the prosecutors; and by providing false and misleading testimony throughout the criminal proceedings, the defendants violated the plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

97.    As a consequence of said defendants' actions, plaintiff suffered loss of liberty, humiliation, mental anguish, depression, loss of wages from work, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in an amount to be determined at trial, against each of the defendants, individually and severally.

CAUSE OF ACTION AGAINST ALL DEFENDANTS: FALSE ARREST,  FALSE IMPRISONMENT, MALICIOUS PROSECUTION AND UNLAWFUL SEARCH PURSUANT TO ARTICLE 1, SECTION 12, OF THE NEW YORK STATE CONSTITUTION

98.     By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 97 of this complaint as though fully set forth herein.

99.     The above-described respective arrest, search, detention, imprisonment and prosecution of the plaintiff were without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's arrest or subsequent detention.

100.    As a result of the plaintiff's above-described false arrest, search, imprisonment and prosecution, he was caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been otherwise damaged in his character and reputation.

101.    Consequently, the plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

102.    The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

CAUSE OF ACTION: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

103.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 102 of this complaint as though fully set forth herein.

104.    The defendants arrested and incarcerated the plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

105.    The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

106.     The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

107.     The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:

a. Wrongfully arresting individuals on the pretext that they are/were involved in illegal vice transactions;

b. manufacturing evidence against individuals allegedly involved in illegal vice transactions;

c. unlawfully searching and/or strip searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband;

d. and arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas).

108.     The aforesaid event was not an isolated incident.  The City and its police commissioner has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City and its police commissioner have allowed policies and practices that allow the aforementioned to persist.

109.     For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact

that such complainants have also brought lawsuits to remedy the
wrongs they have experienced, a practice that often results in not
substantiating the most serious charges brought to them.  In addition,
the CCRB virtually never initiates their own findings of false
statements against officers who have made false statements to the
CCRB in their own defense, nor do they initiate findings that officers
have failed to report their fellow officers' misconduct; thus, officers
have no real incentive to come forward, or to testify truthfully at the
CCRB.  The CCRB has no enforcement mechanisms once making a
finding against an officer; it can only make recommendations to the
NYPD, once finding misconduct by an officer.

110.     The NYPD, once receiving a substantiated complaint by the CCRB,
fails to adequately discipline officers for misconduct.  The NYPD
Department Advocate, which is endowed with the responsibility of
following up on substantiated CCRB charges, is understaffed and
under-utilized.  Furthermore, in the extraordinarily rare event, such as
the matter at bar, that the CCRB substantiates a complaint and the
Department Advocate proves the case in an internal trial against an
officer, the police commissioner still maintains the power to reduce
the discipline against such an officer, which has been done on many
occasions.

111.     Further, the City and its police commissioner have no procedure to
notify individual officers or their supervisors of unfavorable judicial
review of their conduct.  Without this notification, improper search
and seizure practices and incredible testimony go uncorrected.

112.     Additionally, according to a report of the New York City Bar
Association issued in 2000, the City and Kelly have isolated their law
department from the discipline of police officers, so that civil suits
against police officers for actions taken in their capacity as police
officers have no impact on the officers' careers, regardless of the
outcome of the civil actions.  Alan Hevesi, as New York City

Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

113.   The existence of the aforesaid unconstitutional customs and policies may also be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals".

114.   Furthermore, the existence of the aforesaid unconstitutional customs and policies may also be inferred from the ruling (Docket entry 32) of the Court (Eastern District of New York), in the case(s) of <u>Jose Colon v. City of New York</u>, et al (09-cv-8) and <u>Maximo Colon v. City of New York</u>, et al (09-cv-9), wherein the Court stated, *inter alia*, that "*Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department*", and that "*there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving the illegal conduct of the kind now charged*".

115.   The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

(a)   The right of the plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b)    The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

(c)    The right to be free from unreasonable detention and/or continued detention without probable cause in that the plaintiff was detained.

116.    As a result of the actions of the defendants, the plaintiff was deprived of his rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, and New York City without just or legal cause when defendant City, by its employees and/or agents unlawfully arrested and imprisoned the plaintiff thereby depriving him of his liberty without due process of law.

117.    The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for the damages he suffered.

118.    The actual principal/agent relationship between defendant City and the defendant officers was created by the fact they were employees of defendant City, and the City had the right to, and it did indeed regulate and control the activities and conduct of the defendant officers.

119.    The defendant officers actions were vicious, wicked, cold-hearted, intentional, malicious, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.

<u>CAUSE OF ACTION: ASSAULT AND BATTERY</u>

120.     Plaintiff repeats and realleges paragraphs 1 through 119 as if each paragraph is repeated verbatim herein.

121.     At the time of the plaintiff's arrest by the defendants, the plaintiff did not challenge nor resist the defendants, nor engage in any threatening behavior towards the defendants.

122.     However, as set forth above, the defendants assaulted the plaintiff, battered the plaintiff, and subjected the plaintiff to excessive force and summary punishment.

123.     The defendants were at all material times acting within the scope of their employment.

124.     Consequently, the plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against the defendants, individually and severally.

125.     The defendants were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendants acts as described above.

126.     This action, upon information and belief, falls within one or more of the exceptions of CPLR 1602.

WHEREFORE, plaintiff respectfully prays judgment as follows:

1.     For compensatory damages against all defendants in an amount to be proven at trial;

2.     For exemplary and punitive damages against all defendants in an amount to be proven at trial;

3.     For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

4.     For such other and further relief as the court deems proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
     April 6, 2012

LAW OFFICES OF WALE MOSAKU, P.C.

By:           /s/

Wale Mosaku (AM5872)
Attorney for the Plaintiff
25 Bond Street, 3rd Floor
Brooklyn, N.Y. 11201
(718) 243-0994

Linda Mindrutiu, Esq. (VIA ECF)
Assistant Corporation Counsel
City of New York Law Department
Attorney(s) for Defendants
City of New York, Undercover Police Officer C0098, Detective Christopher Schilling,
Sergeant Fritz Glemaud, Detective Michael Petitto, Detective Hasan Elci, Detective
Michael Algieri, Detective Richard Sapienza and Detective Roberson Jeudy
100 Church Street
New York, N.Y. 10007
(212) 788-1177

Undercover Police Officer # C00115
Defendant Pro se
New York City Police Department
1 Police Plaza, Suite 1100
New York, NY 10007